Good morning, Your Honors. May it please the Court, Michael Schneider for Darren Wilder. I would suggest that you're – first of all, I would like to focus my argument on the Sixth Amendment public trial claim. And I would suggest, as I've argued in the reply brief, that the government's case in this matter rises or falls almost completely on whether or not the closure here was a partial closure or a complete closure. As you know, Judge Kastner found that this was a partial closure, and I would suggest that finding is simply not supported by the record. Can I just interject? There's also an argument it wasn't a closure at all, that the courtroom remained open the entire period. Whoever could come in, who wanted to come in, came in. The question instead is a much more refined one about the process of selecting the person who was a victim of child pornography and the process of selecting jurors. And this was a case involving child pornography. It was a case in which the process of selecting jurors necessarily involved some questioning about that subject matter. The judge, as the defendant, was in an antechamber that was not public. So in the antechamber was counsel. The defendant apparently had been advised by his counsel that it was better that he not be in that close proximity to prospective jurors. And the questioning was a bit sensitive, and there was never any request by members of the family, much less the defendant, to be in that antechamber. So that's a somewhat different issue than the usual issue we've had in the courtroom. So does the public have a right to be present if the questioning had been done at sidebar instead of the antechamber? Give me a single case that says that. The public has the right to be in the courtroom if the individual voir dire questioning and the forecaused challenges of the jurors is conducted at sidebar. When the public is in the courtroom, the proceeding is a... They can look at the back of the heads of the people up at the bench. They can rarely hear what is going on, and I believe in that courtroom the judge plays classical music as a sort of white noise to ensure that people who sit in the back of the courtroom do not hear what is said up at the bench. So give me a case, a single case, that says that the public has the right to be up at the bench and participate in all of that. There are cases that say that certainly when Waller findings are made, the questioning of individual voir dire jurors can be conducted at sidebar as long as the public is not excluded. I would strongly beg to differ with you. How is the public excluded in this instance? Anyone could have come into that courtroom. Because, first of all... Can I interject a question because I would like to have your view on this. Yes. Is there any case that holds that the chambers of a judge are part of the courtroom that you are aware of? That the chambers are part of the courtroom? Yeah. I'm not aware of a case that specifically so holds. The cases seem to suggest... What is your view? Is your view that it is or it isn't? My view is that this was a complete closure because the grovement under your Honor's reasoning in Owens and the Supreme Court's reasoning in Waller and Press Enterprise and Presley is the grovement of the Sixth Amendment public trial right is whether the public has the right to contemporaneously review and monitor the proceedings in real time. In fact, when the judge decides to conduct individual voir dire questioning that consumed four and three quarters hours out of a five and a half hour jury selection process, the most critical phase of the proceeding, where the public cannot see any of the parties, that all of the fundamental higher values that your Honor has referred to in the Owens case and that was recently referred to in Negron Sastre are completely devastated. Just factually, the jurors were taken one by one into this antechamber, weren't they? The remaining jurors remained seated out in the courtroom area and were visible to the public. So the only people who were in the jury room when the individual voir dire questioning occurred were the judge, the two lawyers, presumably a court reporter, and the potential juror being questioned. Those were the only parties who had the capacity to scrutinize the facial expressions, the body language, and the other gestures that the jury was making in response to the question. And if the potential juror were instead facing the bench, would people out there be able to see the facial expressions? People, the public and my client's family and supporters would have had a chance to see the process unfolding in real time and would not have been wondering what was going on inside in this secret ante room, in the jury deliberation room. And I think the whole purpose of the public trial right is to not permit this kind of secret process to occur. That was secret, to have the jurors passively sitting in the back. It wasn't a secret. They walked into the room. Perhaps you could tell from facial expressions when they came out of the room that they had been excused or not excused. Actually, they could tell from where they went in the courtroom. So the only thing that they are excluded from is the individual questioning. On the court this topic of their sensitivity, whether they could be fair and impartial in a case involving child pornography. But of course, the exploration of juror biases in response to the individual voir dire questions and the exercise of forecaused challenges is really the pith of the matter, especially in a child porn case, where when you look at what the public got to see, they got to see the generic questions that are asked in all cases in which the potential jurors simply stood up in response to the questions. It turned out all of them stood up in response to the final question, whether they were Internet users. So I'm not sure that members of the public would have learned anything from just seeing the jurors stand up in response to the questions. I beg to differ with the government's position that the defendant sitting in an empty courtroom could learn anything by watching the jurors go in and out of a closed jury deliberation room. And the exercise of peremptory challenge in this case was pure ritual. It took four pages. I really ask that we look at the nature. Counsel, I do understand your argument, but you see there are constitutional values on the other side, which is picking a fair jury. And the best way of doing that that balances the interests of your client, who is entitled to have a fair jury, a work-a-day judge trying to handle this problem. So what are the limits that you would ask us to impose in this sort of situation? The limits are the limits set forth in Press Enterprise, Waller, and Press Corp. No, no, no. Specifically, in this case, what do you say the Constitution required the judge to do? The Constitution requires the judge to do exactly what Waller said it required the judge to do, which was to do. Would you answer my question? It will, surely. It is to find that there was an overriding interest in closure, to make that finding prior to the closure of proceedings. It's not the closure of the courtroom that the Sixth Amendment is concerned about. It's the closure of the proceedings to the court, which I would suggest did occur here. So you're making the procedural argument under Waller that he should have made these individual findings, which he didn't do? Should have made the findings, and in addition, he should have explored reasonable alternatives. Such as? Well, the alternatives are typically sidebar. Judge O'Toole himself, in another notable case, used video feeds to allow members of the public to watch the process unfold at a remote distance. And in addition, the judge could have done what the Supreme Court and Press Enterprise originally suggested that the judge do in what was there a very gory murder-rape case, where the judge said that the judge should have asked the jurors to come. If you have any specific concerns about privacy interests because of your personal experience, I would ask that you approach the bench and tell me, and then we will conduct the questioning at sidebar. How is – I don't understand. How is sidebar different from what the judge did here? I mean, you can see people's backs. But my guess is if we turned off the microphones and brought you up here with us and put on some white noise, that Ms. Lawrence and everyone else in the courtroom would be in the same position as if we moved over to the en banc courtroom. Well, I mean – No one would have any idea what we're talking about or saying. But, Your Honor, hypothetically, if you took a screen, a wooden screen, and closed the entire public off and then conducted the voir dire behind that screen, would you consider that to be not a closure of the courtroom? I don't see how that's any different than a voir dire, that nobody in the courtroom can hear anything that's going on. When the voir dire is done at sidebar, the public is excluded from seeing what's going on or hearing what's going on. But the courts have been interested – the courts are interested, and Judge O'Toole specifically said that he makes his own decisions largely based not just on the verbal responses of potential jurors, but also on the nonverbals, on their facial expressions, their body gestures. But the way most judges do sidebar voir dires, you can't even see the faces of the jurors. Well, I think in some cases you can see the faces, you can see the movements of the body. Okay, so then we'd have to have a constitutional rule on the body positioning of the people at sidebar? That makes no sense. But I still don't see how the court can get around the fact that if you agree that this – look, if you decide that there is no closure here, that you can conduct an entire jury selection in the jury room. No, it's cutting the other way. My point is cutting the other way. Why don't we – let's assume that sidebar two is an effective closure, okay, because it's keeping everyone from participating effectively as if you were in another room. But we allow sidebar voir dires as long as certain conditions are met, right? Right, but the conditions – this procedural stuff is not just small procedural stuff. It's what the Supreme Court has deemed to be – Sure, sure. We're familiar with the case law. – protected by the Six Amendment Values. Yeah, we've read the cases, but now you're here on collateral review, so now you've got to work through the mirror of Strickland to convince us that had this – what I see as a procedural issue been that any reasonable counsel would have raised it and that it would have then led to some elimination of prejudice. And that's where you're losing me. Well, first of all, in terms of Strickland, the trial lawyer – the trial counsel testified at the evidentiary hearing before Judge Casper and acknowledged, as in Owens, that he simply was ignorant of the law. Sure, but we use an objective test under Strickland. So we ask what a reasonable, well – reasonably informed lawyer would have done in the circumstance. And a reasonably informed lawyer would have been aware of – would have been aware of what the law is, would have consulted with his client, and if his client had said to him – and this is what the lawyer said – if I had had that discussion and if I consulted with my client and he told me that he wanted the public present, the public would have been present, and he wouldn't – and he wouldn't have waived that right. After he had told the client himself, my advice to you is do not go in that room. It will make it more difficult to get the type of jury we want. Had his client said, oh, we want the public in the room, what? His family would have gone in the room and he would have remained outside. Oh, under Waller, the court would have then explored the alternatives with defense counsel, and they might very well have decided on doing this at sidebar. Go back to the point that Judge Lynch is asking you about. What – I mean, you've tried criminal cases. Yes. Most criminal defense lawyers that I know in a case like this, they want to find out as much as they can about the jurors, and the last thing they want to have is the jurors feel deterred and not volunteer stuff. So they don't want anybody there generally other than themselves. But – And why isn't that at least a plausible, reasonable alternative, and therefore under Strickland you've run into a roadblock? Because the closure was broader than necessary, and this is where we go back to Waller. Not every potential juror necessarily, if they had been polled, as Press Enterprise suggests, not every juror necessarily would have ended up behind closed doors in the jury room having this secretive process. I'm sorry. It was an error for the judge to assume that questioning a potential juror about their attitudes toward seeing child pornography and whether they could be fair. It was an error for the judge to conclude that this was a privacy concern. He had to ask them first whether they would mind being questioned about their attitudes toward viewers of child pornography. It was an error to have made that blanket assumption without following the dictates of Waller. Okay. That's your case. And you've got to say it was a structural error that we don't even need to explore. Well, I would submit that this was clearly a complete closure because the issue is not whether the courtroom itself remains open and the defendant is permitted to sit in basically an empty courtroom when the action is going on behind closed doors. That is a complete closure. And I think once you get there, then the courts are clear from Owens all the way to Negron-Sastre that this is structural error and that prejudice is presumed. I'm sorry. What the lawsuit is about and the type of questioning by the judge is irrelevant under your test. Is that correct? The judge is obligated under Waller in all instances where there is a complete closure to conduct, to comply with the Waller procedures. Otherwise, the Waller procedures are a dead letter and I don't think the Supreme Court intended that. Well, it wouldn't have been a dead letter if defense counsel had said something, right? Well, defense counsel was ignorant and that's where we get to the cause and prejudice. He admitted that he was ignorant. This was not a strategic decision where he said very cleverly, I want all of this to be conducted behind closed doors. In fact, if the judge had explored the alternatives, it may have ended up that three-quarters of the jurors may have been present at sidebar for discussion. Some of it may have gone on in open court where some of the jurors may have said, I'm perfectly happy answering a few of those questions because I have really nothing to do in secret. Anyway, thank you. Thank you. Ms. Lawrence, good morning. Good morning, Your Honors. May it please the Court. The procedural posture of this case cannot be ignored. We did not have an objection at trial to the voir dire procedure that was used in this case, nor did the defendant raise this issue on direct appeal, notwithstanding that Owens... In what way is that case, is this case different as to that point from Owens? In which no objection was made until much after the trial was over, conviction was over, and he was serving his sentence. Are you asking why the ultimate outcome should be different or how we can distinguish this case from Owens? Well, I'm talking about the fact that there was no objection. True, and in Owens, the Court said that there still needed to satisfy the cause and actual prejudice standards, and that is exactly what we are facing here, and the government submits that the petitioner cannot get past the first step in showing cause, and focusing on the Sixth Amendment claim. Well, considering the fact that the lawyer didn't know the law, how could he object at the time? He did know the law. It wasn't... Well, there's a more specific answer that he gave in his testimony, which is he was aware of the public aware of the limits of that closure principle that was articulated by the Court in Owens, but the Defendant's counsel testified that he knew of the public trial rights. He did not know that it could perhaps apply to the closure of a part of a procedure, and in fact, the government submits that it wouldn't apply in this case to the closure of the individual bodier, which was just one part of the jury process, which is also what distinguishes this case from Owens. Well, I'm sorry to keep interrupting you. I'll give you all the time you need afterwards, but I do not understand this partial closure. Explain to me the difference between partial and total closure. I think there is no set definition in the case law, and the closures that the courts refer to apply to a number of different situations, sometimes to an entire proceeding, such as the suppression hearing in Waller, or large pieces... Well, does it really apply to the physical situation? In other words, if you close the entire building, you know we have a closure of the whole proceeding. If you only close part of the building, etc. This is where I have difficulty with this argument, that this is a partial closure. Well, I think it cuts a lot of different ways, and as to the physical space, there could be... You could say it's a closure if you're behind a closed door, but you also have to consider what's the limitation on access? And I think there's an important distinction between the exclusion of the public, the locking of the doors, or the removing of people from the space, whatever it's a courtroom or whatever space the proceeding is occurring in, and on the other end of the spectrum, an open invitation to come in, compared to what we have here, which is somewhere in the middle. There was absolutely no exclusion. But wait, there wasn't a directive that you don't come in, but I can't imagine any public... I mean, I suspect when we get up and go back into our conference room after this, I doubt many members of the public are going to stroll through the door and come and join us. And it's the same thing in a trial, when Judge Apool gets up and leaves his chambers. Isn't that pretty clear to everybody in the courtroom, that they're not invited into the chambers? Or the ante room? Arguably no, because any time you have... Otherwise, there would be a closure in any public trial that didn't have spectators, simply because no one was invited in. I think there's a difference between not being invited. A judge doesn't have to go out into the hallway to invite spectators in to ensure a fair trial. Well, but everybody knows you're invited into the courtroom. That's generally... But everybody, I think, presumes you're not invited back behind those doors. Absolutely. I think that is a very common understanding. I don't argue that point. But I do think there is a distinction between an exclusion, an affirmative exclusion, which is what occurred, for example, in Owens and Nago and Sostra, and some other cases where the court has said this was the entire proceeding. People were not allowed in. They were affirmatively barred from entering. And a case like this, where it was a small part of the proceeding, a very sensitive part, there were reasons for doing it the way that the court did it, and the lawyers apparently acquiesced subjectively and also objectively. That was reasonable, as this court has said, in the Horton case. And you don't have a situation where you've told the public affirmatively you cannot participate in this process. This comes up all the time in various types of trials, where the judge decides I'm going to question a juror up at sidebar, for example. What's your position on what procedurally the judge must do to question a witness at sidebar? I think the case law is clear that that is not something that would require Waller findings. There have been cases where courts have said that you don't have a right. The public would not necessarily have a right to be at that sidebar proceeding. So you're saying you can routinely do the entire voir dire at sidebar where no one in the public can have any idea what's going on? I believe that is what often occurs, and I understand the defendant's argument to be if it had occurred at sidebar, there wouldn't be a claim. I don't think his argument is sidebar creates a closure. And that's, I think, where the crux of the matter is here. There's no meaningful difference between what occurred in this case with the questioning occurring in a jury room as opposed to the sidebars. As Your Honors have already discussed, there's generally a huddle, white noise playing, you can't hear what's being said, and you're looking at the back of someone's head. Isn't there a difference in the type of questioning that's going to take place of a juror who's in an office with a judge and the lawyers, and the kind of questioning that could take place of that juror where the defendant was present in the courtroom. For example, he could see by the way that the juror answers that there's a question that should be made. How does he communicate that question to the lawyer inside the judge's chambers? Well, as the defendant's right to be present, he does have to Hold on. Let's leave that a minute. I'm talking about the communication that should exist in some way between the defendant and his lawyer regarding what there is taking place. So if he's sitting at a council table and it's occurring in another room. If it's happening in the other room, how would he get that information to the lawyer at that time? Contemporaneously, because I believe that's the word that's used by the Supreme Court. Contemporaneously. He would be unable to, and that's not an issue in this case because his lawyer asked him not to be there. So although he has a right to be there and to participate in that process, and Judge O'Toole said he expects defendants to be there. The lawyer didn't know that he had a right to be there. No, the lawyer knew that the defendant had a right to be there. The lawyer said he didn't know the public could go back into the room. But he knew the defendant did, and he said it's my practice to advise my clients, I don't want you there, and especially in this case with the sensitive nature of the questions. So I don't think there's a strong claim at all as to whether the defendant's Fifth Amendment rights were violated. I thought these were individual rights that the defendant had, apart from the court, apart from the public, apart from anybody else. The defendant does have his own Fifth Amendment right. It is an individual right, but it can be waived on his behalf by his counsel. It's not one of the core rights that the defendant has to waive in a direct colloquy in an open court. You agree that if Judge O'Toole had said to the defendant, you can't come back here even if you want to, that would have been error? That would have been a problem. But you're relying on the fact that the attorney here specifically testified that he knew his defendant had a right to be there, but it was his practice for pretty good reasons not to want his client there and tell his client not to come there. Well, we're in the procedural default land. It would be an objective test, and we have a subjective testimony which can help us. But objectively, it would absolutely not be unreasonable for a defense counsel to ask his defendant to remain seated at the counsel table when he's asking a very personal question about the evidence against him in relation to someone's experiences with child pornography or their ability to remain impartial. So I think objectively, counsel did not perform deficiently in asking him to stay at counsel table. Go ahead. I didn't interrupt you enough. I think I was answering a question. So if the court has no further questions on this issue, we would respectfully ask the court to affirm the decision of the district court in this case. Thank you. Thank you.